IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELMER LEE THOMAS,                    :
                                     :
          Plaintiff,                 :
                                     :
     vs.                             :     CIVIL ACTION NO.   3:02-01854
                                     :     (JUDGE KOSIK)
GERALD NORRIS, et al.,               :
                                     :
          Defendants.                :

## MEMORANDUM AND ORDER

Before this court are the plaintiff's objections (Doc. 69) to the Report and Recommendation (Doc. 68) issued by United States Magistrate Judge Thomas M. Blewitt.  In the May 22, 2006, Report and Recommendation, Magistrate Judge Blewitt suggested that we grant the defendants' motion for summary judgment (Doc. 39) and enter judgment in favor of all defendants and against the plaintiff.  For the reasons that follow, we will adopt the Report and Recommendation of the Magistrate Judge, grant the defendants' motion for summary judgment, enter judgment in favor of all defendants and against the plaintiff, and close this case.

## I.  BACKGROUND

___This is a civil rights action filed pursuant to 42 U.S.C. §1983 by Elmer Lee Thomas (Plaintiff), an inmate currently confined at the State Correctional Institution at Huntingdon (SCI-Huntingdon), Pennsylvania.  The events relevant to this suit occurred at that facility.  The defendants in this action are Gerald Norris, former clothing plant supervisor at SCI-Huntingdon, Richard Ernest, garment factory foreman at SCI-Huntingdon, John Rivello, a corrections officer at SCI-Huntington, and Charles

Mitchell, a hearing examiner at SCI-Huntingdon.

We briefly recount only those facts necessary to comprehend Plaintiff's objections to the Report and Recommendation.  On June 21, 2002, defendant Rivello was conducting searches of prisoners returning to the main prison building from the prison garment factory.  Defendant Rivello noticed that Plaintiff was wearing a homemade, rather than prison issued, hat.  According to prison regulations, inmates are only permitted to wear prison issued clothing.  Defendant Rivello issued Plaintiff a misconduct. Plaintiff was provided with a copy of the misconduct report two days prior to a hearing on the matter before Hearing Examiner Mitchell, another defendant in this action.

Plaintiff filed a written response to the misconduct.  (Doc. 57, Ex. A-1).  Plaintiff requested that two witnesses appear to testify at the hearing, SCI-Huntingdon employees, Jeff Rocco and Lieutenant Kevin Kauffman.  Plaintiff wrote that Mr. Rocco would testify that such hats were common among inmates, and the Lt. Kauffman would testify that defendant Norris, and not defendant Rivello, wanted Plaintiff issued a misconduct. *Id.*  In the response, Plaintiff conceded that he did replace parts of the hat himself. *Id.*  He further offered that he only wore the hat at issue because his other hat was still wet after having been washed. *Id.*  Essentially admitting his violation of prison regulations, Plaintiff concluded, "[t]hus, the real question for the examiner is should he or she punish for an act not in policy, but not uncommon for all inmate shop workers to do." *Id.*

Hearing Examiner Mitchell denied Plaintiff's request to present the two witnesses.

2

Defendant Mitchell believed that the only issue to be decided was whether the hat worn by Plaintiff was contraband. (Doc. 57, Ex. A). He determined that the proffered testimony, establishing that other inmates wear similar hats and identifying the guards that wanted to issue the misconduct, was not relevant to the misconduct. *Id.* Defendant Mitchell found Plaintiff guilty of possessing contraband and innocent of lying to an employee. *Id.* Defendant Mitchell imposed sanctions of thirty (30) days of cell restriction, removal of Plaintiff's prison job, and confiscation of the contraband hat. *Id.*

Plaintiff filed a complaint on October 15, 2002. (Doc. 1). The matter was assigned to Magistrate Judge Thomas M. Blewitt. Magistrate Judge Blewitt determined that the complaint failed to specify any conduct or wrongful act on the part of the named defendants and ordered that Plaintiff file an amended complaint. (Doc. 3). Plaintiff filed an amended complaint on November 6, 2002. (Doc. 4). The amended complaint alleges that the defendants, motivated by racial hatred, falsely charged Plaintiff with a prisoner misconduct and subsequently denied him due process by precluding Plaintiff from presenting the two witnesses at a disciplinary hearing.

The defendants filed a motion for summary judgment on December 19, 2005. (Doc. 39). On May 22, 2006, Magistrate Judge Blewitt authored a Report and Recommendation suggesting that this court grant the defendants' motion and enter judgment in favor of all the defendants and against the Plaintiff. (Doc. 68). The Magistrate Judge noted that while Plaintiff filed a response to the defendants' motion, he failed to respond to the defendants' statement of material facts as required by Local Rule 56.1. The Magistrate Judge accepted the facts as set forth in the

defendants' statement of material facts.   Magistrate Judge Blewitt additionally observed that Plaintiff offered no evidence, with the exception of his own assertions, to counter affidavits and other evidence filed by the defendants.   Finally, the Magistrate Judge noted that Plaintiff had acknowledged the violation, possession of a contraband hat, that resulted in the issuance of the misconduct.  Magistrate Judge Blewitt suggested that there were no material facts in dispute to support any of Plaintiff's Constitutional claims.    Plaintiff filed objections to the Report and Recommendation on   June 1, 2006.  (Doc. 69).   The defendants filed a brief in opposition to Plaintiff's objections on June 15, 2006.  (Doc. 70).  The Plaintiff filed what appears to be a reply brief in support of the objections on June 26, 2006.  (Doc. 71).

Plaintiff's objections number nine paragraphs.   Read liberally, however, the objections raise three challenges to the Report and Recommendation.  Paragraphs one, two, three, four, five, and seven charge that the Magistrate Judge failed to consider the surveillance video from the prison.   In paragraph four, Plaintiff additionally argues that the Magistrate Judge should have held the *pro se* plaintiff's filings to a less stringent standard.   Paragraph six may be construed to challenge Magistrate Judge Blewitt's suggestion that Plaintiff's due process rights were not violated when the defendants prevented Plaintiff from calling some witnesses at the disciplinary hearing.

## II. STANDARD OF REVIEW

### A.    Objections To Report And Recommendation

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a *de novo* determination of those portions of the report to which objections are made.  28 U.S.C. §636(b)(1);  *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).   In doing so we may accept, reject or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.  28 U.S.C. §636(b)(1); Local Rule 72.3.  Although our review is *de novo*, we are permitted to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem  proper.  *United States v. Raddatz*, 447 U.S. 667, 676,  100 S.Ct. 2406, 2413 (1980).

### B.    Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, the court must view the record in a light most favorable to the non-moving party.  *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001).  Moreover, the court must draw all reasonable inferences in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The burden rests with the moving party to demonstrate that there is no genuine issue of material fact.  Thereafter, the non-moving party must counter with evidence

that supports each essential element of his or her claim. *Skerski*, 257 F.3d at 278 (citing *Pittston Co. Ultramar Am. Ltd. v. Allainz Ins. Co.*, 124 F.3d 508, 515 (3d Cir. 1997)).  The non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts," and where the record taken as a whole could not allow a rational fact-finder to find in favor of the non-moving party, summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A.    Plaintiff's Objection To Exclusion Of Surveillance Video

This court has construed several of Plaintiff's objections to assert that Magistrate Judge Blewitt failed to consider video surveillance film when ruling on the defendants' motion.   Specifically, in his first numbered objection, Plaintiff objects, "to the magistrate's deletion of the prison video camera tape recordings . . .." (Doc. 69).  Five other numbered objections include variations of the same accusation.  A review of the record, however, reveals that Plaintiff never submitted prison surveillance video for the Magistrate Judge's consideration.

Plaintiff filed several motions concerning the video surveillance tape prior to Magistrate Judge's issuance of the Report and Recommendation.  On April 17, 2003, Plaintiff filed a motion for summary judgment, default judgment, sanctions, and seeking an order compelling the defendants to preserve video surveillance tapes. (Doc. 14).  Magistrate Judge Blewitt denied Plaintiff's motion by order of April 29, 2003, but advised the defendants of their duty to maintain evidence relevant to the

6

case. (Doc. 15).  On June 12, 2003, Plaintiff filed a motion that, in part, sought to compel the defendants to produce the video surveillance.  Plaintiff, however, had not requested the video through discovery prior to filing the motion.  (Doc. 19).  On June 18, 2003, Magistrate Judge Blewitt denied Plaintiff's motion and directed Plaintiff to request discovery from the defendants pursuant to Federal Rule of Civil Procedure 26. (Doc. 20).  In their response to Plaintiff's objections, the defendants contend that Plaintiff never requested the video surveillance.  (Doc. 70).  No surveillance video is listed as an exhibit on the docket or included in the physical file before this court.

There is no support for Plaintiff's contention that the Magistrate Judge improperly disregarded video evidence when ruling on the defendants' motion for summary judgment.  The file before us reveals that Plaintiff did not pursue discovery of any video evidence pursuant to the procedures set forth in Fed.R.Civ.P. 26 and 34. Plaintiff neglected to seek the video through discovery despite the fact that the Magistrate Judge explained the discovery process in his June 18, 2003, order denying Plaintiff's motion to compel the production of the video surveillance tape.  (Doc. 20). Plaintiff's objection asserting that Magistrate Judge Blewitt improperly excluded video evidence is without merit.

**B.     Plaintiff's Objection To Standard Applied To Pro Se Filings**

Paragraph four of Plaintiff's objections, states as follows:

> Plaintiff objects to the magistrates [sic] failure to comply with the going outside of the mandate of <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (that, po [sic] se pleadings held to less stringent standards than paper drafted by lawyers). Is violated when the magistrate excluded from his determination plaintiff invoking the prison video tape recordings proof evidence the "summary judgment can

> not granted defendants because plaintiff can prove his
> asserted facts entitling him to relief." <u>Haines v. Kerner</u>, Id.
> at 520-21.

Plaintiff appears to argue that the Magistrate Judge should have held the *pro se* plaintiff to a lower standard when reviewing the latter's submissions.   Specifically, Plaintiff seems to contend that the Magistrate Judge did not hold Plaintiff to a lower standard when the former excluded the surveillance video from consideration in ruling upon the defendants' motion for summary judgment.   In support of his argument, Plaintiff cites *Haines v. Kerner*, 404 U.S. 519, 520 (U.S. 1972), for the proposition that district courts are to hold pleadings filed by *pro se* plaintiffs to less stringent standards.

While district courts are counseled to liberally construe *pro se* pleadings, all parties must follow the Federal Rules of Civil Procedure.   In this instance, Magistrate Judge Blewitt, in recognition of Plaintiff's *pro se* status, specifically instructed Plaintiff that he must seek the production of evidence through discovery requests to the defendants prior to filing a motion to compel.   (Doc. 20).   Despite this admonition, there is no evidence that Plaintiff ever made a discovery request for the video surveillance. Moreover, the docket reveals that no such evidence was submitted to the Magistrate Judge by Plaintiff.   As we noted above, Magistrate Judge Blewitt did not exclude any video evidence from consideration.   Magistrate Judge Blewitt did not hold the *pro se* plaintiff to an inappropriate standard in reviewing any of the latter's submissions to the court. Rather, the record demonstrates that the Magistrate Judge carefully considered Plaintiff's many filings and even advised Plaintiff of the appropriate discovery procedure to seek the production of the video tapes.   There is no basis for Plaintiff's

objection that Magistrate Judge Blewitt erred in holding Plaintiff to an improper standard for pleadings or motions.

### C.    Plaintiff's Objection Alleging Due Process Violations

In paragraph six of his objections, Plaintiff appears to challenge Magistrate Judge Blewitt's suggestion that Plaintiff's due process rights were not violated when defendant Mitchell precluded Plaintiff from calling some witnesses at the disciplinary hearing.  Specifically, Plaintiff contends:

> Plaintiff objects to the magistrate [sic] contentions that the hearing examiner and the prison write-up officer is equal, if not better, than the two defendants that supervise making prisoners [sic] clothing, for determining a contraband hat, that Defendants Enest [sic] and Norris did not so determine.  Although clearly aware of his wearing the hat in question when he is searched by one and seen it being given to him by a white inmate, by the other.

We are reticent to speculate as to what Plaintiff means when he objects to the "magistrate [sic] contentions that the hearing examiner ... is equal ... to the two defendants that supervise making prisoners [sic] clothing . . .."  This court recognizes, however, that Plaintiff is an inmate prosecuting this claim *pro se*.  Reading the above objection liberally, we will construe it as an objection to Magistrate Judge Blewitt's suggestion that defendant, Hearing Examiner Mitchell, did not violate Plaintiff's due process rights when he precluded Plaintiff from calling SCI-Huntingdon staff as witnesses at the disciplinary hearing.

The Fourteenth Amendment of the United States Constitution provides, "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law . . .."  The Supreme Court provided a two-part analysis to be applied in procedural due

9

process cases.  First, a court must determine, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property.'" *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  Second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" *Id.* If there is no protected liberty or property interest implicated in a procedural due process claim, it is unnecessary to determine what procedures were constitutionally mandated.

Prisoners in state institutions do enjoy the protection of the Constitution and the Due Process Clause.  *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).  Lawful incarceration, however, "brings about the necessary withdrawal or limitation of many privileges and rights . . .."  *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (internal citations omitted).  While prisoners retain some rights under the Due Process Clause, restrictions on those rights are imposed by the nature of the correctional system to which the individuals are lawfully confined.  *Wolff*, 418 U.S. at 556.  Specifically, the Supreme Court has determined that, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Id.*

In *Sandin,* the Supreme Court addressed the issue of whether the type of confinement to which a prisoner is subjected raises a "liberty" interest protected by the Due Process Clause.  *Sandin* involved the procedural due process claims of a state prisoner who had been found guilty of misconduct and sentenced to thirty (30) days in disciplinary segregation.  During the hearing, the disciplinary committee refused to

allow the prisoner to present witnesses in his defense. *Sandin*, 515 U.S. at 483. The *Sandin* plaintiff asserted that the prison officials' refusal to permit his witnesses at the disciplinary hearing and the resulting thirty (30) day disciplinary confinement encroached upon a liberty interest created by Hawaii state regulations governing disciplinary hearings and protected by the Due Process Clause. *Id*. at 484. The Supreme Court disagreed, finding that no liberty interest was implicated. The Court held that the plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 486. The Supreme Court concluded that, "neither the [state] prison regulation in question, nor the Due Process Clause itself, afforded [the prisoner] a protected interest that would entitle him to the procedural protections set forth in *Wolff*." *Id*. at 487.

In his complaint and amended complaint, Plaintiff claims that his due process rights were violated when Hearing Examiner Mitchell precluded Plaintiff from calling the SCI-Huntingdon staff members as witnesses. Plaintiff further alleges that upon being found guilty of the misconduct, he was removed from his single cell, lost thirty (30) days of prison population privileges, and lost his job at the prison clothing plant. Plaintiff has failed to allege that a protected property or liberty interest has been affected by the defendants' actions.

A state prisoner has no Constitutionally protected property interest in a specific prison job. Similarly, prison population privileges are not a liberty interest protected by the Fourteenth Amendment. Finally, given that the Supreme Court has held that

11

thirty (30) days of segregated confinement does not implicate a Constitutionally protected liberty interest, we cannot conclude here that Plaintiff had a liberty interest in private cell accommodations. *See Sandin*, 515 U.S. at 486 (holding "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). The first aspect of the two-part *Ingraham* due process analysis is lacking in this instance. Accordingly, we need not determine whether the procedures followed by the defendants violated Plaintiff's due process rights. *See Ingraham*, 430 U.S. at 672 (holding "[d]ue process is required only when a decision of the State implicates an interest within the protection of the Fourteenth Amendment").

## IV. CONCLUSION

We will adopt Magistrate Judge Blewitt's Report and Recommendation, dismiss Plaintiff's objections thereto, and grant the defendants' motion for summary judgment. Plaintiff's contention that the Magistrate Judge erred in failing to consider surveillance video evidence is without merit as Plaintiff neither requested such evidence through discovery, nor submitted video evidence to the court for consideration. Magistrate Judge Blewitt did not apply an improper standard when reviewing the *pro se* plaintiff's submissions to the court. Finally, Magistrate Judge Blewitt correctly suggested that judgment should be entered in the defendants' favor on Plaintiff's due process claims where Plaintiff's allegations do not implicate a property or liberty interest protected by the Fourteenth Amendment. We will grant the defendants' motion for summary judgment as they established that there is no genuine issue as to any material fact

12

regarding Plaintiff's claims.  Plaintiff failed to counter with any evidence in support of the essential elements of this §1983 action.  *See Skerski*, 257 F.3d at 278 (holding after moving party established lack of issue as to any material fact,  non-moving party must counter with evidence that supports each essential element of his claim).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELMER LEE THOMAS,                      :
                                       :
          Plaintiff,                   :
                                       :
     vs.                               :     CIVIL ACTION NO.  3:02-01854
                                       :     (JUDGE KOSIK)
GERALD NORRIS, et al.,                 :
                                       :
          Defendants.                  :

## <u>ORDER</u>

AND NOW, this 8th day of September, 2006, IT IS HEREBY ORDERED THAT:

[1] the plaintiff's objections (Doc. 69) to the Report and Recommendation, are **dismissed**;

[2] the Magistrate Judge's Report and Recommendation (Doc. 68) is adopted;

[3] the defendants' motion for summary judgment, (Doc. 29) is granted;

[4] judgment is hereby entered in favor of all defendants and against the plaintiff; and,

[5] the Clerk of Court is directed to close this case and forward a copy of this Memorandum and Order to United States Magistrate Judge Thomas M. Blewitt.

                              s/Edwin M. Kosik_____
                               United States District Judge